UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

WILLIAM F. LAPLANTE,
D/B/A MEDIA ALLIANCE
    PLAINTIFF

    V.                                  3:04-CV-322 (CFD)

NEAL ESTANO
    DEFENDANT

## RULING AND ORDER ON
## MOTION FOR ATTORNEYS' FEES,
## COSTS, AND PREJUDGMENT INTEREST

This case involves a contract dispute between a talent agent and a television broadcast meteorologist. On October 18th and 19th of 2005 Judge Droney presided over a bench trial in this case. On April 19, 2007 Judge Droney issued a memorandum of decision finding in favor of the defendant and counterclaim plaintiff Neal Estano and entered judgment in the amount of $18,621. (Dkt. #77.) The undersigned defers to that decision for its recitation of the facts and its analysis of the relevant legal issues.

The two issues of import presented in the instant motion (Dkt. #81) are (1) whether the defendant is entitled to attorneys fees and costs pursuant to the contract he entered into with the plaintiff, and (2) whether the defendant is also due prejudgment interest under Conn. Gen. Stat. § 37-3a on the judgment entered by Judge Droney.

## I. ATTORNEYS' FEES

The attorneys' fees provision of the contract between LaPlante and Estano here reads as follows, "[i]f either party breaches any provision of this agreement, then that party shall pay attorney's fees and costs of litigation in regard to said breach." (Def's Reply Br. at 1.) The provision does not limit the fees recoverable to "reasonable" fees. Under Connecticut law, "a contract clause providing for reimbursement of 'incurred' fees [as opposed to 'reasonable' fees] permits recovery upon the presentation of an attorney's bill, so long as that bill is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the trier's own expert judgment." Storm Assoc., Inc. v. Baumgold, 186 Conn. 237, 245, 440 A.2d 306, 310 (Conn. 1982). Under such contracts, the prevailing party discharges its burden merely by providing the court with evidence showing the services provided by counsel with respect to the breach of contract and the fees charged for those services. Francis T. Zappone Co. v. Plymouth Commons Realty Corp., No. CV0208206841, 2004 Conn. Super. LEXIS 1967, at *17 (Conn. Super. Ct. July 28, 2004). If the prevailing party makes such a showing, the burden then shifts to the breaching party to "establish that such fees were unreasonable, either because they were billed at unreasonably

high rates or because they were actually incurred for a wholly unrelated purpose."[1] Id.

The defendant here seeks a total of $64,673.90 in attorneys' fees. In support of this application the defendant has supplied an affidavit by his primary counsel, Attorney Bradford Babbitt of the law firm Robinson & Cole LLP, setting forth the hourly rates at which he, his associates and his paralegals bill, as well as their relevant levels of experience and education. (Dkt. #82) (Aff. of Bradford S. Babbitt). The defendant has also submitted every monthly billing statement that he received from Robinson & Cole throughout the case. (Dkt. #82 Ex. B pts 1-3.) Defendant represents that he has paid all of the bills with the exception of

---

[1] The plaintiff cites Smith v. Snyder, 267 Conn. 456, 479 (2004) for the proposition that "[t]he burden of establishing the reasonableness of a fee application is on the applicant." (Pl's Mem. in Opp'n at 3.) The court does not agree with plaintiff's interpretation of the Smith case. Rather, the cited portion of the Smith decision speaks more specifically to the applicant's evidentiary burden – i.e. the applicant's burden to provide the court with sufficient evidence showing how many hours were spent, on what, at what rate, and by whom. Smith does not stand for the proposition that in all attorney's fees applications the burden is on the moving party to show reasonableness. However, because that case involved an application for attorney's fees under the Connecticut Unfair Trade Practices Act and the Uniform Trade Secrets Act, both of which limit the amount recoverable to "reasonable attorney's fees," Conn. Gen. Stat. § 42-110g (d) (CUTPA); Conn. Gen. Stat. § 35-53 (b) (Uniform Trade Secrets Act), the burden was rightly left on the applicant to establish reasonableness. Smith, therefore, does not alter the holding in Storm Associates, which held that where an attorney's fee provision of a contract does not contain a "reasonableness" provision, the burden is on the party opposing the application to show that the fees sought are unreasonable.

those for services rendered in April and May of 2007, totaling $4,197.50. (Def's Mem. in Supp. at 4.)

### A.

The plaintiff's first argument is that the fees sought should be substantially reduced because they are "excessive, redundant or otherwise unnecessary." (Pl's Mem. in Opp'n at 4.) The plaintiff contends that the defendant has over billed by using multiple attorneys on one task, having partners perform tasks that could have been handled by associates or paralegals and, in Attorney Babbitt's case, billing for preparation for depositions that he did not attend. LaPlante also criticizes Robinson & Cole's practice of "block billing" which he appears to define as the practice of entering only one time entry per day, rather than logging many separate entries reflecting time spent on discrete tasks. LaPlante has attached a list of all the fees that he believes are excessive, redundant and unnecessary to his motion in opposition. (Dkt. # 84 Ex. A.) This list includes time entries for $26,459 of billed fees.

The court has reviewed the contested billing entries and finds that they are reasonable. First, in a larger firm such as Robinson & Cole it not unusual for multiple attorneys working on a single case to confer with one another to discuss strategy. This practice accounts for the "double billing" complained of by LaPlante. While double billing clients should not be a firm's standard operating

procedure, a moderate amount of such billing should be expected and is found here to be reasonable.

Second, the court finds unavailing plaintiff's contention that the defendant should not be reimbursed for the time billed by Attorney Babbitt in preparing for depositions for which he did not attend. Attorney Babbitt was the only partner assigned to this case. It is reasonable to expect that he would review the case and give his input regarding what topics should be covered during the deposition. Although Attorney Manzo ultimately took the deposition, she was an associate and it is reasonable to expect Attorney Babbitt to exercise some oversight over her actions.

Third, the court does not find that the "block billing" entries complained of by LaPlante here are too vague. By way of example, the plaintiff points to 18.3 hours Attorney Babbitt claimed to "prepare for trial." Under the circumstances, the court does not think that a more verbose description would be any more helpful. It cannot honestly be argued that an attorney should not prepare for a trial, nor can it be argued Attorney Babbitt's time was wasted as a trial did, in fact, occur here. The only question is whether 18.3 hours is a reasonable amount of time to prepare for a two-day bench trial. The undersigned finds that it is.

Finally, the plaintiff's argument that certain "routine" activities could have been done by an associate rather than a partner does not justify a downward adjustment of the attorneys'

fees requested under the circumstances here. That associates might have been available to Attorney Babbitt does not mean that the court should require him to use them. Whether an associate or a partner performs the bulk of the work in a case is a decision best left between the firm an its clients. The court should not micro-manage these internal firm decisions unless there is clear evidence that the firm intentionally "milked the file." Under the circumstances presented here, the court does not find it inappropriate for Attorney Babbitt to have personally worked on a great deal of the file.

**B.**

The plaintiff also argues that Mr. Estano's attorneys' fees should be reduced because he was only partially successful on the counterclaim. The defendant brought a four-count counterclaim comprising of claims for (1) breach of contract; (2) breach of fiduciary duty; (3) implied covenant of good faith and fair dealing; and (4) unjust enrichment. Judge Droney found in favor of the defendant on count one and against the defendant on counts two and three. Judge Droney did not consider the fourth count because he found that any such damages awarded under that count would be duplicative of those awarded under the breach of contract count. Based on this outcome, the plaintiff argues for a 70 percent across-the-board reduction in fees.

Under the typical lodestar approach the court would normally consider the results obtained as well as whether it is possible to identify specific blocks of time spent solely on unsuccessful claims in determining whether to reduce a fee award. The analysis is slightly different here because we are dealing with the interpretation of a contract provision, not the lodestar analysis. Under the contract provision at issue here, the prevailing party was entitled to "attorney's fees and costs of litigation in regard to said breach." The parties appear to be in agreement that this provision entitles the prevailing party to attorneys' fees only for legal work done in furtherance of the breach of contract claim, not the other counts. As the plaintiff and the defendant are the only two parties to the contract, the court will accept this interpretation as an accurate reflection of what the parties agreed to at the time of the contract's formation. The ultimate question, therefore, is whether Robinson & Cole would have spent less time on this case, but for the existence of the other three counts.

In arguing that his fee award should not be reduced, Estano contends that his "four counterclaims and his defense of the plaintiff's claim all involved a common core of facts and related legal theories." (Def's Reply Br. at 6.) In other words, the defendant asks the court to find that his attorneys would have spent the same amount of time on the case had he simply brought a single-count breach of contract counterclaim. The defendant's

argument is convincing in so far as it asserts that the universe of facts that must have necessarily been gathered under the breach of contract count is identical or, at the very least, largely similar to those facts that would be sought under the other counts. The argument is not as availing when it comes to the issue of legal research preformed in this case. At some point, the defendant's attorneys needed to research the elements of breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, and unjust enrichment. Deposition questions and other discovery techniques also likely targeted certain discrete facts that the defendant hoped to elicit to support his theory on these counts. Finally, a portion of the trial preparation and the trial itself were likely spent addressing issues solely related to the non-breach of contract claims. In sum, it is clear to the court that at least some portion of Robinson & Cole's time spent in this case related to issues wholly unrelated to the breach of contract claim. The real question is how much?

The court finds that it was the intention of the parties here to entitle the non-breaching party to attorneys' fees only insofar as those fees relate to legal work preformed with regard to the breach. Therefore, in the spirit of this agreement, the court finds that it is appropriate to reduce the amount of attorneys' fees sought by the defendant by 10% to account for the work preformed by his attorneys solely on counts unrelated to the breach

of contract claim. The fees sought are therefore reduced by $6,467.39, to a total sum of $58,306.51.

## II. COSTS

The defendant also seeks $4,546.55 in costs associated with the litigation. (Dkt. #82 Ex. D.) The plaintiff's sole objection to the costs is that the defendant has included in the amount sought $1,411.95 in Westlaw and Lexis-Nexis research fees. (Pl's Mem. in Opp'n at 6 n.5.) The plaintiff's argument is well taken. In this District, taxable costs do not include "[c]omputerized legal research fees. . . ." D. Conn. L. Civ. R. 54(7)(xi). Likewise, the Connecticut Practice Book does not list Westlaw or Lexis fees in its definition of costs. 1 Conn. Prac., Super. Ct. Rules § 18-19 (2007). The court, therefore, finds that the term "costs" under the contract here at issue does not include fees charged for computer legal research. The defendant's costs are therefore reduced by $1,411.95, to a total sum of $3,134.60.

## III. PREJUDGEMENT INTEREST

Under Conn. Gen. Stat. § 37-3a (a), a party is entitled to "interest at the rate of ten per cent a year . . . in civil actions . . . for the detention of money after it becomes payable." Here, Judge Droney found that LaPlante wrongfully withheld the agent fees paid by Estano for the time period between April 2002 and August 2003. "Wrongfully" simply means without the legal right to do so, and does not require that the court find malice or bad faith.

Accordingly, the court finds that the defendant is entitled to the $9,840.04 in prejudgment interest sought.

### IV. <u>CONCLUSION</u>

For the reasons set forth herein, the defendant's motion for attorneys' fees **(Dkt. #81)** is **GRANTED**. The defendant is awarded (1) $58,306.51 in attorneys' fees; (2) $3,134.60 in costs; and (3) $9,840.04 in prejudgment interest. The plaintiff shall comply with this ruling and order within sixty days hereof.

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this <u>25th</u> day of September, 2007.**

<u>/s/ Thomas P. Smith</u>
**THOMAS P. SMITH**
**UNITED STATES MAGISTRATE JUDGE**